# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 11-CR-3053-LRR |
| vs. | **ORDER** |
| TOMMY KUEHL, | |
| Defendant. | |

_____

## I. INTRODUCTION

The matter before the court is Defendant Tommy Kuehl's "Motion to Dismiss Indictment" ("Motion") (docket no. 11).

## II. PROCEDURAL HISTORY

On November 16, 2011, the grand jury returned a one-count Indictment (docket no. 2) against Defendant. The Indictment charges that, between about May of 2011 and September 29, 2011, Defendant knowingly failed to register and update his registration as required by the Sex Offender Registration and Notification Act ("SORNA" or "the Act") in violation of 18 U.S.C. § 2250(a).

On January 24, 2012, Defendant filed the Motion. On February 3, 2012, the government filed a Resistance (docket no. 20). The Motion is fully submitted and ready for decision.

## III. FACTUAL BACKGROUND

On April 12, 1991, Defendant was convicted of two counts of Attempted Sexual Conduct with a Minor in the Superior Court of Maricopa County, Arizona. The court sentenced Defendant to twelve years in prison and he was released on August 12, 2002. Two days later, Defendant signed an Arizona Department of Public Safety Sex Offender

Registration Form acknowledging his duty to register as a sex offender. Defendant last updated his registration on December 2, 2003. At that time, Defendant indicated that he was living in Phoenix, Arizona. On July 31, 2004, the Arizona Adult Probation Office reported Defendant's whereabouts as unknown.

On September 29, 2011, Defendant was arrested in Mason City, Iowa, for trespassing. Following his arrest, law enforcement learned that Defendant had been living in Iowa since July of 2011 and that he had failed to register as a sex offender in the State of Iowa.

## IV. *STATUTORY AND REGULATORY BACKGROUND*

SORNA, which became effective on July 27, 2006, "requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." *Reynolds v. United States*, ___ U.S. ___, ___, 132 S. Ct. 975, 978-79 (2012); *see also* 42 U.S.C. § 16913 (setting forth registration requirement). A person who (1) "is required to register under [SORNA]," (2) "travels in interstate or foreign commerce" and (3) "knowingly fails to register or update a registration as required by [SORNA]" is guilty of a crime punishable by a fine and/or imprisonment for up to ten years. 18 U.S.C. § 2250(a).

Under the Act, the "Attorney General shall have the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before the enactment of [SORNA] or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders." 42 U.S.C. § 16913(d). On February 28, 2007, the Attorney General issued an interim rule extending SORNA's application "to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 72 Fed. Reg. 8894, 8897 (Feb. 28, 2007) (codified at 28 C.F.R. § 72.3). In promulgating this rule, the Attorney General did not

2

comply with the notice and comment procedures prescribed by the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 553(b)-(d); *see also United States v. Valverde*, 628 F.3d 1159, 1162 (9th Cir. 2010) (describing the "three-step process" required under the APA, including notice of the proposed rule by publication in the Federal Register, a thirty-day period for public comment and publication of the final rule thirty days before its effective date), *cert. denied*, No. 11-40, 2012 WL 538716 (U.S. Feb. 21, 2012) (mem.). Instead, the Attorney General invoked the good-cause exception. *See* 72 Fed. Reg. at 8896-97. Under the good-cause exception, an agency may dispense with the notice and comment requirements if such procedures "are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(3)(B). Similarly, "for good cause found and published with the rule," an agency may make the rule effective immediately instead of waiting thirty days after publication. *Id.* § 553(d)(3). At the time he issued the rule, the Attorney General stated that the good-cause exception applied because the notice and comment procedures were "contrary to the public interest." 72 Fed. Reg. at 8897. Specifically, the Attorney General explained that "[t]he immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements" and to protect the public safety. *Id.* at 8896-97; *see also Valverde*, 628 F.3d at 1166-68 (discussing the Attorney General's justifications for promulgating the interim rule on an emergency basis). On December 29, 2010, the Attorney General proposed a new rule finalizing the interim rule. *See* 75 Fed. Reg. 81,849 (Dec. 29, 2010). This final rule became effective on January 28, 2011. *Id.* at 81,850.

On May 30, 2007, the Attorney General published proposed "guidelines to interpret and implement SORNA." 72 Fed. Reg. 30,210 (May 30, 2007). Following a period for public comment, the Attorney General published the final guidelines ("SMART guidelines") on July 2, 2008. *See* 73 Fed. Reg. 38,030 (July 2, 2008). The SMART guidelines reaffirm the Attorney General's interim rule that SORNA applies to pre-Act

offenders. *See id.* at 38,046 (noting that SORNA applies to "all sex offenders, including those whose convictions predate SORNA's enactment"). The guidelines state that they became effective on July 2, 2008—the same day they were published in the Federal Register. *Id.* at 30,030.

## V. ANALYSIS

In the Motion, Defendant, as a pre-Act offender, requests that the court dismiss the Indictment for two reasons. First, Defendant argues that Congress violated the nondelegation doctrine when it delegated to the Attorney General the authority to determine the applicability of SORNA to pre-Act offenders. Second, Defendant argues that the Attorney General's interim rule extending SORNA to pre-Act offenders violated the APA's notice and comment requirements.

The court first addresses Defendant's standing to challenge SORNA's applicability to him. Because the court finds that Defendant does have standing, the court then turns to the nondelegation doctrine and the validity of the Attorney General's interim rule under the APA.

### A. Standing

In *United States v. May*, 535 F.3d 912, 921 (8th Cir. 2008), *abrogated in part by Reynolds*, 132 S. Ct. 975, the Eighth Circuit Court of Appeals held that defendants who were required to register under state law prior to SORNA's enactment lacked standing to challenge SORNA's applicability to pre-Act offenders. *See also, e.g.*, *United States v. Mefford*, 417 F. App'x 586, 587 (8th Cir. 2011) ("[W]e have held that sex offenders who were required to register before SORNA's passage . . . are unaffected by the Attorney General's expanded authority."), *vacated and cert. granted*, No. 11-6241, 2012 WL 538290 (U.S. Feb. 21, 2012). The Eighth Circuit joined four other Courts of Appeals that similarly held that SORNA's requirements "apply from the date of the Act's enactment" to pre-Act offenders who were required to register under state law. *Reynolds*, 132 S. Ct.

4

at 980. Six other Courts of Appeals, however, determined that SORNA's "registration requirements do not apply to pre-Act offenders unless and until the Attorney General so specifies." *Id.*

In *Reynolds*, the Supreme Court addressed this circuit split and held "that the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies." *Id.* at 984. In deciding that pre-Act offenders have standing to challenge SORNA, the Supreme Court, however, did not indicate whether such challenges would be successful. *See id.* (remanding to the Third Circuit Court of Appeals).

Thus, in light of *Reynolds*, the court concludes that Defendant has standing to challenge the applicability of SORNA's registration requirements to pre-Act offenders. *See United States v. Fernandez*, ___ F.3d ___, ___, No. 11-1734, 2012 WL 612457, at *1 (8th Cir. Feb. 28, 2012) ("*Reynolds* establishes that [the defendant] has standing to raise his non-delegation claim, and we remand for the district court to consider that claim on the merits.").

### B. Nondelegation Doctrine

First, Defendant contends that Congress violated the nondelegation doctrine by delegating to the Attorney General the power to determine SORNA's applicability to pre-Act offenders. Specifically, Defendant contends that "Congress failed to articulate any policy to guide the Attorney General on the retroactivity of the Act." Motion at 6 (quoting Brief for the Appellant, *United States v. Lucas*, 419 F. App'x 690 (8th Cir. 2011) (No. 10-3410), 2010 WL 5080144, at *20). For the reasons set forth in the government's Resistance, the court disagrees.

"The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). "Congress may delegate its legislative power if it 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to

5

conform." *South Dakota v. U.S. Dep't of the Interior*, 423 F.3d 790, 795 (8th Cir. 2005) (alterations in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). "The Supreme Court has given Congress wide latitude in meeting the intelligible principle requirement . . . ." *Id.* "The Supreme Court has struck down statutes on delegation grounds on only two occasions." *Id.*

In this case, Defendant contends that

> Congress gave no guidance to the Attorney General as to whether all individuals who were convicted of sex offenses prior to the Act should be subject to SORNA, regardless of the remoteness of their offenses, regardless of when they completed their sentences, and regardless of the nature of the offenses.

Motion at 6 (quoting Brief for the Appellant, *Lucas*, 419 F. App'x 690, 2010 WL 5080144, at *20). The court disagrees. Congress clearly laid out the purpose of SORNA: "In order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators against the victims listed below, Congress . . . establishes a comprehensive national system for the registration of those offenders . . . ." 42 U.S.C. § 16901. Thus, in issuing guidelines and determining the retroactivity of SORNA, the Attorney General is guided by "the broad policy goal of protecting the public and seeking a 'comprehensive' national registry." *United States v. Ambert*, 561 F.3d 1202, 1214 (11th Cir. 2009); *accord United States v. Whaley*, 577 F.3d 254, 264 (5th Cir. 2009). Furthermore, because "Congress made virtually every legislative determination in enacting SORNA," the Attorney General's discretion is "narrow and defined." *Ambert*, 561 F.3d at 1214. Thus, the court finds that Congress did not violate the nondelegation doctrine when it delegated to the Attorney General the authority to determine the applicability of SORNA to pre-Act offenders. *See, e.g.*, *United States v. Stewart*, Nos. 11-4420, 11-4471, 2012 WL 130746, at *1 (4th Cir. Jan. 18,

2012); *United States v. Guzman*, 591 F.3d 83, 93 (2d Cir. 2010); *Whaley*, 577 F.3d at 264; *Ambert*, 561 F.3d at 1213-14.

### C. Validity of Interim Rule

Defendant next argues that the Attorney General improperly invoked the good-faith exception when he issued the interim rule and, consequently, violated the notice and comment requirements of the APA. The court, however, finds it unnecessary to determine the validity of the interim rule. As the court previously noted, the Attorney General issued the interim rule on February 28, 2007. 72 Fed. Reg. at 8894. On May 30, 2007, the Attorney General issued the proposed SMART Guidelines. 72 Fed. Reg. at 30,210. On July 2, 2008, the Attorney General published the final SMART guidelines, which reaffirm that SORNA applies to pre-Act offenders. 73 Fed. Reg. at 38,030, 38,046. Defendant does not allege that the final SMART guidelines are defective under the APA. Thus, SORNA became applicable to pre-Act offenders, at the latest, on August 1, 2008—thirty days after publication of the final SMART guidelines.[1] *See United States v. Stevenson*, ___ F.3d ___, ___, Nos. 10-1043, 10-1117, 2012 WL 573326, at *6 (6th Cir. Feb. 23, 2012); *see also Valverde*, 628 F.3d at 1169 (noting, in dicta, that SORNA became retroactive on August 1, 2008); *cf. Stevenson*, 2012 WL 573326, at *2 n.2 (noting that the

---

[1] The court notes that the SMART guidelines purportedly became effective on July 2, 2008—the same day the Attorney General published the guidelines in the Federal Register. *See* 73 Fed. Reg. at 38,030. The Attorney General, however, failed to explain and publish with the guidelines the reasons why good cause existed for making the guidelines effective immediately. *See* 5 U.S.C. § 553(d)(3). It appears, therefore, that the SMART guidelines became effective thirty days after they were published in the Federal Register, or August 1, 2008. *See United States v. Stevenson*, ___ F.3d ___, ___, Nos. 10-1043, 10-1117, 2012 WL 573326, at *6 (6th Cir. Feb. 23, 2012) (citing *United States v. Utesch*, 596 F.3d 302 (6th Cir. 2010)). Because the conduct in this case occurred well after August 1, 2008, the court finds it unnecessary to determine when the final SMART guidelines became effective.

Fourth, Fifth, Seventh and Eleventh Circuit Courts of Appeals have held that SORNA became retroactive on February 28, 2007).

The Indictment charges that Defendant failed to register in accordance with SORNA "[b]etween about May 2011 and September 29, 2011." Indictment at 1. Thus, Defendant allegedly violated the SORNA registration requirement after the final SMART guidelines became effective. Consequently, even if the Attorney General violated the notice and comment requirements when he issued the interim rule, it has no bearing on the outcome of this case. Accordingly, the court finds that Defendant's argument regarding the validity of the interim rule is without merit.

## VI. CONCLUSION

In light of the foregoing, Defendant's Motion to Dismiss Indictment (docket no. 11) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 12th day of March, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA